**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KELLY BONE, CHRISTINA SAWYER and JANINE BUCKLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HILL'S PET NUTRITION, INC., HILL'S PET NUTRITION SALES, INC., and JOHN DOES 1-10, <br><br> Defendants. | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Kelly Bone, Christina Sawyer and Janine Buckley bring this action, individually and on behalf of all others similarly situated, against Hill's Pet Nutrition, Inc. and Hill's Pet Nutrition Sales, Inc. (together, "Hill's" or "Defendant"), and John Does 1-10, and allege as follows:

## NATURE OF THE CASE

1.      Hill's manufactures, markets, warrants and sells Hill's Prescription Diet ("Prescription Diet") and Hill's Science Diet ("Science Diet") dog foods (collectively, the "Specialty Dog Foods").  These foods are specially formulated for the specific health needs of certain dogs.  In marketing materials and packaging for the Specialty Dog Foods, Hill's says it is providing "[n]utrition that can transform the lives of pets and comfort the pet parents and vets who care for them," and claims that "differences you can see, feel & trust" all "start with science."

2.      Contrary to Hill's representations, however, Hill's has manufactured, sold and warranted Specialty Dog Foods containing toxic and often fatal levels of vitamin D.

3.      Excessive vitamin D poses substantial and unreasonable risks to dogs. As Hill's itself recognized in recalling a subset of its Specialty Dog Foods, "elevated levels of vitamin D" can cause symptoms such as "vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, and weight loss," and can lead to "serious health issues in dogs including renal dysfunction and failure and death."[1]

4.      Many dog owners have witnessed their dogs suffer as a result of consuming the Specialty Dog Foods.  The dogs have required expensive veterinary treatment, and many of them have died, resulting in additional suffering, and costs, to their owners.

5.      Not only has Hill's sold contaminated food, but it has dragged its feet in issuing a recall and in including all contaminated food within the scope of the recall.  Hill's failure to promptly recall *every* contaminated product sold under the Prescription Diet and Science Diet lines is particularly egregious because it knew or should have known that these products contained toxic levels of vitamin D.  Not only does Hill's claim to subject its suppliers, raw materials and finished products to extensive and repeated quality testing,[2] but vitamin D toxicity was a known risk much earlier than January 31, 2019 when Hill's first announced its recall:  in December of 2018 several other brands of dog food were recalled due to toxic levels of vitamin D found in those products, and dogs eating Hill's Specialty Dog Foods began dying of vitamin D toxicity well before that.

6.      The lethal nature of Hill's Specialty Dog Foods has been compounded by Hill's excessive and unwarranted delay in warning consumers and regulatory agencies of the dangers

---

[1] https://www.hillspet.com/productlist (last visited February 11, 2019).
[2] https://www.hillspet.com/about-us/quality-and-safety (last visited February 11, 2019).

posed by those products and caused untold numbers of pet owners significant emotional distress and financial loss.

7.     Accordingly, Plaintiffs bring this class action on behalf of themselves and all other similarly situated consumers.  Plaintiffs seek monetary relief and an order forcing Hill's to provide appropriate injunctive relief by ensuring that *all* potentially affected products are identified on Hill's website and removed from shelves.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Defendant.  The Court also has federal question jurisdiction based on the Magnuson-Moss Warranty Act, 15 U.S.C. § 231, *et seq.*, and supplemental jurisdiction over state and common law claims based on 28 U.S.C. § 1367(a).

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant transacts business in this District, advertises in this District and has received substantial revenue and profits from the sale of the Specialty Dog Foods in this District, including Plaintiff Buckley and other members of the Class.  Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

10.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this District, and intentionally and purposefully place the Specialty Dog Foods into the stream of commerce from within the Eastern District of New York and throughout the United States.

3

11.     Plaintiff Kelly Bone is a citizen of the State of Florida and currently resides in North Port, Florida.

12.     Plaintiff Christina Sawyer is a citizen of the State of North Carolina and currently resides in Charlotte, North Carolina.

13.     Plaintiff Janine Buckley is a citizen of the State of New York and currently resides in Staten Island, New York.

14.     Defendant Hill's Pet Nutrition, Inc. is a Delaware corporation, with its principal place of business in Kansas.  Hill's is located at 400 SW 8th Avenue, Topeka, Kansas 66603.

15.     Defendant Hill's Pet Nutrition Sales, Inc. is a Delaware corporation, with its principal place of business in Kansas.  Defendant Hill's Pet Nutrition Sales, Inc. is authorized by the New York Secretary of State to do business within the State of New York.

16.     Plaintiffs include John Does 1-10 as defendants because it is not clear how many persons or entities other than Hill's may bear responsibility for or benefit from the manufacture and sale of the contaminated Specialty Dog Foods.

## COMMON FACTUAL ALLEGATIONS

### Hill's and its Products

17.     Hill's manufactures and sells pet food internationally, and is one of the largest suppliers of pet food in North America.

18.     Hill's sells its pet food products, including the Specialty Dog Foods, at veterinary clinics and pet retailers across the United States, including PetSmart and Petco, as well as through online retailers like Amazon and Chewy.  No matter where consumers purchase the

Specialty Dog Foods, they are packaged in sealed containers with the same labeling and packaging that is displayed on the Hill's website.[3]

19.    In order to better sell the Specialty Dog Foods, and to entice veterinarians to prescribe them, Hill's markets the Specialty Dog Foods as formulated and intended for dogs with specific needs or illnesses, such as: age-specific dietary needs, breed-specific dietary needs, digestive issues, heart issues, liver issues, or kidney issues.

20.    Hill's website touts the Specialty Dog Foods' performance properties, claiming that the products "[s]upport[ ] a healthy immune system,"[4] "improve and lengthen quality of life,"[5] "can be used long-term,"[6] "[p]rotect[ ] vital kidney & heart function,"[7] "[s]upport your dog's natural ability to build lean muscle daily,"[8] and "meet[ ] the special nutritional needs of puppies and adult dogs."[9] Hill's repeats these claims on the Specialty Dog Foods' packaging.

21.    Hill's also issues a "100% Satisfaction" money-back guarantee with every Specialty Dog Food purchase.

22.    Based on Hill's money-back guarantee and various affirmations of fact and purportedly "clinically proven" effectiveness, consumers across the country pay a premium for the Specialty Dog Foods, believing they are tailored to the specific needs of their dogs and safe for pet consumption.

---

[3] *See, e.g.,* https://www.hillspet.com/dog-food (last visited February 11, 2019)
[4] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-canine-canned# (last visited February 11, 2019).
[5] *See, e.g.,* https://www.hillspet.com/dog-food/pd-kd-canine-canned (last visited February 11, 2019).
[6] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-sensitive-canine-dry# (last visited February 11, 2019).
[7] *See, e.g.,* https://www.hillspet.com/dog-food/pd-kd-canine-canned# (last visited February 11, 2019).
[8] *Id.*
[9] *See, e.g.,* https://www.hillspet.com/dog-food/pd-id-canine-chicken-and-vegetable-stew-canned (last visited February 11, 2019).

23.     Instead, the Specialty Dog Foods that consumers across the country have fed to their pets have proven to be toxic, causing symptoms of renal failures such as dehydration, diarrhea, loss of appetite, increased thirst, lethargy, vomiting, and often death.[10]

**Vitamin D Toxicity**

24.     For an unknown but discoverable period of time, Hill's has manufactured the Specialty Dog Foods with excessive, toxic and potentially lethal levels of vitamin D.

25.     Some vitamin D is necessary for dogs because it helps regulate calcium and phosphorous levels, aids bone formation, and promotes nerve and muscle control.

26.     Excess vitamin D, however, can cause vomiting, loss of appetite, increased thirst, increased urination, excessive drooling, weight loss, muscle tremors, cardiac abnormalities and seizures.

27.     Eventually—and sometimes quite rapidly—consumption of excessive vitamin D can cause kidney failure and death.

**Excessive Vitamin D in Hill's Products and Hill's Knowledge of that Contamination**

28.     The experiences of Plaintiffs and other consumers demonstrate that Hill's Specialty Dog Foods have contained excessive levels of vitamin D levels—and that Hill's has known about that contamination—for some time.

29.     As early as February of 2018,[11] dog owners began to complain that Hill's Specialty Dog Foods were causing their pets to display symptoms consistent with vitamin D poisoning, such as "daily diarrhea, excessive thirst and constant food begging."[12]

---

[10] https://www.nbcchicago.com/news/national-international/Pet-Owners-Say-Their-Dogs-Are-Sick-Dying-After-Eating-Recalled-Hills-Pet-Nutrition-Dog-Food-505379451.html?_osource=SocialFlowFB_CHBrand&fbclid=IwAR1YE1ZUss2ZVHkMlzlwfqLHC9a-saet-TckbfEDEghbUj3mckLYzN (last visited February 11, 2019).
[11] https://www.consumeraffairs.com/pets/hills.html?page=2 (Feb. 25, 2018 review posted by "Carrie").
[12] https://www.consumeraffairs.com/pets/hills.html (May 21, 2018 review posted by "Mandy").

30.     As evidenced by the experiences of Plaintiffs Bone and Sawyer, elaborated upon below, Hill's actively monitors the internet for consumer complaints about its products.

31.     As a result of online consumer complaints, Hill's thus knew or should have known of the elevated vitamin D levels in the Specialty Dog Foods by at least February of 2018.

32.     Hill's also claims to have rigorous quality assurance protocols in place, processes that did or should have alerted it to the toxic levels of Vitamin D in its raw materials.

33.     Hill's touts its "proven commitment to quality and safety" and claims that it "only accept[s] ingredients from suppliers whose facilities meet stringent quality standards and who are approved by Hill's," and further examines each ingredient "to ensure its safety."

34.     Similarly, Hill's claims that it "conduct[s] annual quality systems audits for all manufacturing facilities to ensure [they] meet the high standards your pet deserves" and "conduct[s] final safety checks daily on every Hill's pet food product to help ensure the safety of your pet's food."

35.     Hill's further claims that "all finished products are physically inspected and tested for key nutrients prior to release to help ensure your pet gets a consistent product bag to bag."

36.     As a result of the quality control procedures it should have and claims to have for its Specialty Dog Foods, Hill's learned, or should have learned, of the excessive and fatal levels of vitamin D before a single can of contaminated Specialty Dog Foods was sold.[13]

37.     Further, at some point prior to December 3, 2018, a pet food manufacturer which had received complaints from pet owners about dogs suffering from vitamin D toxicity informed the FDA that it was recalling several product lines.

---

[13] https://www.hillspet.com/about-us/quality-and-safety (last visited February 11, 2019).

38.     The FDA began to test products and concluded that a wide swath of dog foods sold in the United States contained potentially lethal doses of vitamin D:  sometimes as much as 70 times the intended dose.

39.     On December 3, 2018, the FDA issued a press release warning pet owners about potentially toxic levels of vitamin D in several brands of pet food, and noting that it was working with a common contract manufacturer of pet food to provide a comprehensive list of affected brands.

40.     The FDA stated that test samples of the dog food contained "excessive, potentially toxic amounts of vitamin D" and warned that excess vitamin D can cause "vomiting, loss of appetite, increased thirst, increased urination, excessive drooling and weight loss," or even "kidney failure and death."

41.     Despite the FDA's public warnings, Hill's continued to manufacture, sell and warrant its Specialty Dog Foods unabated, to the detriment of consumers and their pets alike, for nearly two months after the press release was issued.

42.     Dog owners have incurred substantial expenses as a result of purchasing the Specialty Dog Foods, including the cost of the food itself, veterinary bills for dogs who have consumed the contaminated products, and even costs associated with cremation and burial of dogs.  Some pet owners have accrued thousands of dollars in veterinary bills and related expenses.

**The Recall**

43.     On January 31, 2019, Hill's announced an initial recall of canned Prescription Diet and Science Diet products.  Hill's issued a press release detailing the risk of excessive

vitamin D consumption and identifying affected products.[14]

44.     Even though a video message included with the January 31, 2019 recall represented that the SKU and lot numbers identified in the January 31, 2019 recall were "confirmed to be the only affected products in this voluntary canned dog food recall[]", on February 7, 2019, Hill's announced an expansion of the recall to include additional SKU and lot numbers of canned Prescription Diet and Science diet products.[15]

45.     To date, Hill's has not identified the cause of vitamin D toxicity beyond claiming it is "due to a supplier error."

46.     Moreover, Hill's has done little to calm the fears of dog owners concerned about their dogs' health after learning of the recall.  Despite claims that it will be operating for longer hours with an increased number of staff, Hill's has failed to manage the high volume of incoming complaints.  Many class members have been unable to reach Defendant's customer service representatives.

47.     Some consumers who have been able to reach Hill's customer service representatives to report the illness and death of their dogs have been offered only coupons redeemable for future dog food purchases.

48.     Worse, dogs that consumed Hill's products which are not yet part of the recall are exhibiting symptoms of vitamin D toxicity.  For example, Plaintiffs have heard complaints from a number of consumers whose dogs ate dry dog food (rather than canned dog food) sold under the Hill's Prescription Diet and Science Diet brand names and who reported that their dogs' symptoms are consistent with vitamin D toxicity.  Thus, it appears that Hill's has recalled only a subset of its affected Specialty Dog Foods.

---

[14] https://www.hillspet.com/productlist (last visited February 11, 2019).
[15] *See, e.g.*, http://www.dvm360.com/hill-s-recall-expanded-pet-owners-demand-answers (last visited February 11, 2019).

49.     Indeed, as of the date of filing, the recall involves about 675,000 cases of canned food, or less than 4 percent of Hill's annual U.S. sales, according to the company.

50.     Accordingly, dog owners will continue to see their beloved pets suffer until Hill's recalls each and every product contaminated by high levels of vitamin D.

## PLAINTIFFS' EXPERIENCES

**Plaintiff Bone**

51.     Plaintiff Bone fed Hill's Specialty Dog Foods to her dog, Duncan, for several years. Duncan was a trained service dog and she relied upon him to alert her to seizures.

52.     Bone's veterinarian recommended the special Hill's food to help Duncan with his pancreatitis. Bone decided to feed Duncan the Specialty Dog Foods after reviewing the information reflected on the product labeling, believing the food would help Duncan with his health.   Bone purchased the Specialty Dog Foods from both her veterinarian and from Chewy.com.

53.     Duncan was healthy until January 7, 2019, when he began to experience drastic weight loss and foaming of the mouth.  He lost half of his body weight over a period of days. The veterinarian did blood work which showed that his enzymes were elevated but not enough to kill him. Two days after the blood testing, Duncan was not getting any better and was given two rounds of antibiotics. On the fourth day, he couldn't walk and was going into a coma. The veterinarian advised that there was nothing else to be done and that, because the dog was very uncomfortable, the only option was to put him to sleep.  Duncan died on January 12, 2019.  Bone is devastated by the loss of her dog.

54.     Bone posted about her experience with Duncan and Hill's Specialty Food on social media.  Hill's saw her post and reached out to her.

10

55.     When Bone acquired Duncan 13 years ago, the cost of obtaining the service dog was $13,000 plus fees for an additional 14 months of specialized training for her seizure condition. She anticipates that the cost of obtaining a new service dog will be in excess of that amount. In addition, she incurred veterinary bills exceeding $600.

56.     Plaintiff Bone would not have purchased the Specialty Dog Foods had she known they contained levels of vitamin D that were unreasonably dangerous to her dog.

**Plaintiff Sawyer**

57.     Plaintiff Sawyer fed Hill's Specialty Dog Foods to her dog Taco beginning in November, 2018.  Taco had pancreatitis but it was not severe, and the veterinarian said it would heal or reverse itself after Taco began the Specialty Dog Foods.  Sawyer decided to feed Taco this special food after reviewing the information reflected on the product labeling, believing this food would help Taco with her health.

58.     In the days leading up to her death, there was a drastic change in Taco's health. She started losing weight, was thirsty all of the time, began to shake and have tremors, and was vomiting.  Eventually she had trouble walking and standing. Taco died on January 24, 2019. Sawyer and her family, including her autistic daughter, are devastated by the loss of Taco.

59.     Sawyer posted about her experience with Taco and Hill's Specialty Food on social media.  Hill's saw her post and reached out to her.

60.     Sawyer paid $2.99 per can for the Specialty Dog Foods and purchased a total of 4 cases with 20 cans per case, totaling $239.  She incurred veterinary bills for blood work and veterinary visits after Taco started eating the Hill's Science Diet food, and also paid $270 for Taco's cremation.

61.     Plaintiff Sawyer would not have purchased the Specialty Dog Foods had she known they contained levels of vitamin D that were unreasonably dangerous to her dog.

**Plaintiff Buckley**

62.     Plaintiff Buckley fed Hill's Specialty Dog Foods to her dog Lily for several years after the recommendation from her veterinarians that it would help with her gastrointestinal issues and kidney disease.  Buckley decided to feed Lily this special food after reviewing the information reflected on the product labeling, believing this food would help Lily with her health.  It did help with Lily's health, and Lily's condition was stable until May, 2018.

63.     A few days prior to May 31, 2018, Lily began experiencing vomiting, loss of appetite, excess thirst, excess urination and episodes of drooling. This prompted Buckley to seek emergency medical attention for Lily. Lily was admitted to the animal hospital. Attempts to get Lily to eat on her own while she was in the hospital failed, so she was fed a different type of food with an esophageal feeding tube. Lily seemed to be doing better through the summer of 2018 while she was being fed different dog food.

64.      In November 2018, Lily went back on the Hill's Specialty Dog Food, still being fed through her feeding tube. Buckley has now learned that this food has been included in the Hill's recall.  Lily began to decline again, experiencing drooling, weakness and dark stools. She was placed on daily subcutaneous fluids to sustain her kidneys.

65.      Lily had to be humanely euthanized in Buckley's arms on November 27, 2018. She continued to be fed the Hill's Specialty Food through her feeding tube until the night she died. Lily meant the world to Buckley and her loss has been the most painful loss she has ever experienced.

66.     Buckley incurred several thousands of dollars in veterinary and hospital bills after

Lily started eating the Hill's Science Diet food.

67.     Plaintiff Buckley would not have purchased the Specialty Dog Foods had she known they contained levels of vitamin D that were unreasonably dangerous to her dog

## CLASS ACTION ALLEGATIONS

68.     This action is brought and may be maintained under Federal Rule of Civil Procedure 23 as a class action.

69.     Plaintiffs seek to represent the following Classes:

Nationwide Class: All persons in the United States who purchased Hill's Prescription Diet or Science Diet dog food with elevated levels of vitamin D;

Florida Subclass: All persons in the State of Florida who purchased Hill's Prescription Diet or Science Diet dog food with elevated levels of vitamin D;

North Carolina Subclass: All persons in the State of North Carolina who purchased Hill's Prescription Diet and Science Diet dog food with elevated levels of vitamin D; and

New York Subclass: All persons in the State of New York who purchased Hill's Prescription Diet and Science Diet dog food with elevated levels of vitamin D.

70.     The Nationwide Class and the state Subclasses shall be collectively referred to herein as the "Class."   Excluded from the Class are: (1) Defendant, and any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased Hill's Prescription Diet or Hill's Science Diet canned foods for resale.

71.     Plaintiffs and members of the Class seek relief under Rule 23(b)(2).   The injunctive relief is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation.  Plaintiffs and members of the Class also seek relief under Rule 23 (b)(3) and/or (c)(4).

13

72.    **Numerosity**: Hill's has manufactured and sold the Specialty Dog Foods to tens of thousands of consumers.  As of the date of filing, Hill's has recalled 675,000 cases—or 13.5 million cans—of Specialty Dog Foods.  Members of the Class are thus too numerous to join in a single action.  Moreover, members of the Class may be identified through retailer sales records, veterinary practice sales records, and self-identification processes, and may then be notified of the pendency of this action by mail or electronic mail (which can be supplemented by published notice if deemed necessary or appropriate by the Court).

73.    **Commonality and Predominance**: Common questions of law and fact exist as to all proposed members of the Class and predominate over questions affecting only individual members of the Class.  These common questions include:

    a.  Whether Hill's intentionally, recklessly or negligently authorized injurious pet food to enter the market;

    b.  Whether Hill's failed to properly test its Specialty Dog Foods before placing them into the stream of commerce;

    c.  Whether the packaging and labeling of the Specialty Dog Foods deceptively represents the Specialty Dog Foods as wholesome, nutritious, and fit for canine consumption;

    d.  Whether the packaging and labeling of the Specialty Dog Foods adequately discloses the significant health risks described above, including, but not limited to, dehydration, diarrhea, loss of appetite, increased thirst, lethargy, vomiting, renal failure, and death;

    e.  Whether the Specialty Dog Foods are unfit for their intended use;

    f.   Whether Hill's intentionally, recklessly or negligently delayed in instituting a recall of the Specialty Dog Foods;

    g.   Whether the recall is adequate and properly notifies potentially affected consumers;

    h.   Whether the alleged conduct constituted unlawful, unfair, or fraudulent business practices in violation of the state consumer fraud statutes invoked below;

    i.   Whether Hill's has been unjustly enriched as a result of its the alleged conduct;

    j.   Whether Hill's violated an implied or express warranty to Plaintiffs and the Class;

    k.   Whether Plaintiff and members of the Class have sustained damages as a result of the alleged conduct, and, if so, the appropriate measure of damages; and

    l.   Whether Plaintiff and members of the Class are entitled to punitive damages, and, if so, in what amount.

74.    **Typicality**: Plaintiffs' claims are typical of the claims of the proposed classes. Plaintiffs and the members of the proposed classes all purchased the Specialty Dog Foods, giving rise to substantially the same claims.

75.    **Adequacy**: Plaintiffs are adequate representatives of the proposed classes because their interests do not conflict with the interests of the members of the classes they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

76.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each member of the Class, while meaningful on an individual basis, is not great enough to make the prosecution of individual actions economically feasible.  Even if members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

77.    In the alternative, the proposed classes may be certified because:

a.  The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Hill's;

b.  The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.  Hill's has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

78.    Hill's benefited from the sale of the Specialty Dog Foods to Plaintiffs and the Class.  The benefit can be identified from sales records and such monies can be restored to

Plaintiffs and the Class.

## CAUSES OF ACTION

### Count I
### Negligence
### (By All Plaintiffs on Behalf of the Nationwide Class)

79.     Plaintiffs reallege the paragraphs above as if fully set forth herein.

80.     Defendant owed a duty to Plaintiffs and the Class to provide pet food that was safe and suitable for pet consumption.

81.     Through its failure to exercise due care, Defendant was negligent in manufacturing, distributing, marketing, warranting and selling Specialty Dog Foods to Plaintiffs and the Class.

82.     Defendant failed to implement adequate quality control and adequate testing of the Specialty Dog Foods that it introduced into the stream of commerce for sale to Plaintiffs and the Class and for consumption by their pets.

83.     Defendant knew, or should have known, that its Specialty Dog Food presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

84.     Defendant's negligence proximately caused losses and damages to Plaintiffs and the Class, as described above.

### Count II
### Breach of Express Warranty
### (By All Plaintiffs on Behalf of the Nationwide Class)

85.     Plaintiffs reallege the paragraphs above as if fully set forth herein.

86.     Defendant expressly warranted that the Specialty Dog Foods were suitable and safe for pet consumption.

87.     Defendant affirmatively misrepresented the qualities and benefits of the Specialty Dog Foods as detailed above.  Defendant expressly warranted the Specialty Dog Foods as particularly healthy food tailored to the specific needs of Plaintiffs' and the Class' dogs including, but not limited to, age-specific dietary needs, breed-specific dietary needs, digestive issues, heart issues, liver issues, or kidney issues.

88.     Hill's also promises its customers a full refund if they are not satisfied with the Specialty Dog Foods.

89.     However, the Specialty Dog Foods were not safe for dogs to consume and caused dogs to become ill and/or die.  The unsafe nature of the Specialty Dog Foods constitutes a breach of the express warranties Defendant made.

90.     The Specialty Dog Foods were sold in sealed packaging, and the defects existed when the products left Hill's control.  When it designed, manufactured, and sold the Specialty Dog Foods, Hill's knew the purpose for which the Specialty Dog Foods were intended, *i.e.* that the Specialty Dog Foods would be consumed by dogs.

91.     Plaintiffs and the Class were induced by Defendant's marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the express warranty in purchasing the Specialty Dog Foods and feeding them to their dogs.

92.     As a proximate result of the aforementioned wrongful conduct and breach, Plaintiffs and the Class have suffered damage in an amount to be proven at trial, including the cost of the Specialty Dog Foods.  Hill's has actual or constructive notice of such damages, which may fairly and reasonably be considered as arising naturally from the breach or may reasonably be supposed to have been in the contemplation of the parties at the time they made warranties as

to the Specialty Dog Foods, and the probable result of the breach of such warranties.

**Count III**
**Breach of Implied Warranty**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

93. Plaintiffs reallege the paragraphs above as if fully set forth herein.

94. Defendant is a merchant under sections 2-104 and 2-314 of the Uniform Commercial Code.

95. Through its marketing, advertising, promotion, packaging and labeling of its Prescription Diet and Science Diet dog food, Defendant impliedly warranted that the Specialty Dog Foods were fit for the ordinary purpose for which they were intended, which was to safely nourish dogs and particularly address the specific needs of Plaintiffs' and the Class' dogs including, but not limited to, age-specific dietary needs, breed-specific dietary needs, digestive issues, heart issues, liver issues, or kidney issues, pursuant to section 2-314 of the Uniform Commercial Code.

96. Through their marketing, advertising, promotion and labeling, Defendant knew that Plaintiffs and the Class would purchase the Specialty Dog Foods for the ordinary purpose of providing nourishment to their dogs.

97. Defendant manufactured, distributed, marketed, advertised, promoted and sold its dog food for the ordinary purpose for which it was purchased by Plaintiff and the Class.

98. The Specialty Dog Foods were sold in sealed packaging, and the defects alleged existed when the products left Defendant's control.

99. Plaintiffs and the Class relied upon Defendant's representations and warranties, and purchased and used Defendant's dog food for the ordinary purpose for which it was sold.

100. Defendant's Specialty Dog Foods purchased by Plaintiffs and the Class were unfit

for their ordinary purpose when sold because they presented an unreasonable risk of illness or death to dogs.  Defendant has accordingly breached the implied warranty of merchantability by selling the unfit dog food.

101.    Plaintiffs and the Class were damaged as a proximate result of Defendant's breach of warranty.

**Count IV**
**Violations of the Magnuson-Moss Warranty Act**
**15 U.S.C. § 231, *et seq*.**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

102.    Plaintiffs reallege the paragraphs above as if fully set forth herein.

103.    Plaintiffs and the other members of the Class are "consumers" within the meaning of 15 U.S.C. § 2301(3).

104.    Defendant is a "supplier" and "warrantor" within the meanings of 15 U.S.C. § 2301(4)-(5).

105.    Hill's Prescription Diet and Science Diet dog food products are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

106.    Defendant's written descriptions created through its marketing, advertising, promotion, packaging and labeling of the Specialty Dog Foods, as well as the 100% satisfaction guaranty, created a "written warranty" as to the Prescription Diet and Science Diet canned dog food products.  There was an implied warranty for the sale of such products within the meaning of the Act, as described above.

107.    For the reasons detailed above, Defendant breached this implied warranty, as the Prescription Diet and Science Diet canned dog food was not fit for its intended use and were harmful and toxic to dogs.

108.    The Specialty Dog Foods were sold in sealed packaging, and the defects alleged

existed when the products left Defendant's control.

109.    Defendant's breach of implied and express warranties has deprived Plaintiffs and class members of the benefit of their bargain.

110.    Defendant knew of the defects yet failed to remedy these breaches, damaging Plaintiffs and the Class. In addition, any relief offered by Defendant through its recall of the Specialty Dog Foods is wholly inadequate under the circumstances.  Any requirement that Plaintiffs resort to any informal dispute settlement procedure or afford Defendant a reasonably opportunity to cure the breach of warranty described above is excused or alternatively, has been satisfied.

111.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

112.    As a direct and proximate cause of Defendant's breach, Plaintiffs and the Class sustained damages and other losses in an amount to be determined at trial.  Plaintiffs and the other members of the Class are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

**Count V**
**Violation of N.Y. Gen. Bus. Law § 349**
**(By Plaintiff Buckley on Behalf of the New York Subclass)**

113.    Plaintiffs reallege the paragraphs above as if fully set forth herein.

114.    Plaintiff Buckley and members of the New York Subclass are "persons" within the meaning of N.Y. Gen. Bus. § 349(h).

115.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. § 349(b).

116.     Under N.Y. Gen. Bus. § 349, "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful.  N.Y. Gen. Bus. § 349(a).

117.     Defendant engaged in deceptive acts and practices in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling the Specialty Dog Foods to the Class while misrepresenting and concealing material facts about the contents of the Specialty Dog Foods, including representing that the Specialty Dog Foods were safe for consumption and particularly health foods and beneficial to the specific needs of Plaintiff's and the Class' dogs, when in reality they were harmful and toxic to dogs.

118.     Defendant had exclusive knowledge of the fact that the Specialty Dog Foods were not fit for their intended purpose and were not safe for consumption.  Defendant failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and the Class.

119.     Plaintiffs and class members were unaware, and did not have reasonable means of discovering, the material facts that Defendant both misrepresented and failed to disclose.

120.      Defendant's failure to disclose material facts concerning the contents of the Specialty Dog Foods was misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendant's conduct.

121.     These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of the Specialty Dog Foods.

122.    As a direct and proximate result of Defendant's unlawful methods, acts, and practices, Plaintiff Buckley and the New York Subclass were injured because, among other reasons, they purchased the Specialty Dog Foods.  Had Plaintiff Buckley and the New York Subclass known about the defective nature of the Specialty Dog Foods, they would not have purchased the Specialty Dog Foods, they would not have fed their dogs the Specialty Dog Foods, their dogs would not have suffered the resulting medical conditions or would not have died, and they would have avoided the expensive medical treatment associated therewith.

123.    As a direct, foreseeable and proximate result of Defendant's misrepresentations, omissions, deceptive acts, and practices, Plaintiff Buckley and the members of the New York Subclass suffered actual damages by paying for the Specialty Dog Foods and paying for veterinary care and other costs arising from the illness and/or death of their dogs.  Defendant's products were worthless and thus damages are the purchase price of the products as well as the associated veterinary and death-related costs and the value of the dogs they lost.

124.    Defendant's acts and practices were willful and knowing.

125.    Plaintiff Buckley and the New York Subclass are entitled to injunctive relief, recovery of actual damages or fifty dollars per violation (whichever is greater), treble damages up to one thousand dollars, and their reasonable costs and attorneys' fees. *See*, N.Y. Gen. Bus. § 349(h).

126.    Plaintiff Buckley and New York Subclass members who were sixty-five years of age or older at the time of Defendant's violations of N.Y. Gen. Bus. § 349 are entitled to pursue additional claims and remedies against Defendant pursuant to N.Y. Gen. Bus. § 349-c to redress Defendant's violations of N.Y. Gen. Bus. § 349 (a) perpetrated against one or more elderly persons.

**Count VI**
**Violation of the N.Y. Gen. Bus. Law § 350**
**(By Plaintiff Buckley on Behalf of the New York Subclass)**

127.    Plaintiffs reallege the paragraphs above as if fully set forth herein.

128.    Plaintiff Buckley and members of the New York Subclass are "persons" within the meaning of N.Y. Gen. Bus. § 350-e.

129.    Under New York law, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." N.Y. Gen. Bus. § 350.

130.    Defendant engaged in false advertising in the conduct of business, trade, and commerce by manufacturing, distributing, marketing, and selling the Specialty Dog Foods to the Class while misrepresenting and concealing material facts about the contents of the Specialty Dog Foods, including representing that the Specialty Dog Foods were safe for consumption and particularly health foods and beneficial to the specific needs of Plaintiff's and the Class' dogs, when in reality they were harmful and toxic to dogs.

131.    Defendant had exclusive knowledge of the fact that the Specialty Dog Foods were not fit for their intended purpose and were not safe for consumption.  Defendant failed to disclose these facts despite having a duty to disclose this material information to Plaintiff and the Class.

132.    Plaintiffs and class members were unaware, and did not have reasonable means of discovering, the material facts that Defendant both misrepresented and failed to disclose.

133.    Defendant's failure to disclose material facts concerning the contents of the Specialty Dog Foods, and misrepresentations concerning the efficacy and performance properties

thereof, were misleading in a material respect because a reasonable consumer acting reasonably under the circumstances would have been misled by Defendant's conduct.

134.    These acts and practices were consumer-oriented because they had a broad impact on consumers at large, affecting all purchasers of the Specialty Dog Foods.

135.    As a direct and proximate result of Defendant's unlawful methods, acts, and practices, Plaintiff Buckley and the New York Subclass were injured because, among other reasons, they purchased the Specialty Dog Foods.  Had Plaintiff Buckley and the New York Subclass known about the defective nature of the Specialty Dog Foods, they would not have purchased the Specialty Dog Foods, they would not have fed their dogs the Specialty Dog Foods, their dogs would not have suffered the resulting medical conditions or would not have died, and they would have avoided the expensive medical treatment associated therewith.

136.    As a result of Defendant's misrepresentations, omissions, deceptive acts, and unfair practices, Plaintiff Buckley and the members of the New York Subclass suffered actual damages by paying for the Specialty Dog Foods and paying for veterinary care and other costs arising from the illness and/or death of their dogs.  Defendant's products were worthless and thus damages are the purchase price of the products as well as the associated veterinary and death-related costs and the value of the dogs they lost.

137.    Defendant's acts and practices were willful and knowing.

Plaintiff and the Class are entitled to injunctive relief, recovery of actual damages or five hundred dollars per violation (whichever is greater), treble damages up to ten thousand dollars, and their reasonable costs and attorneys' fees. *See*, N.Y. Gen. Bus. § 350-e(3).

**Count VII**
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. 501.201-.213, *et seq*.**
**(By Plaintiff Bone on Behalf of the Florida Subclass)**

138.    Plaintiffs reallege the paragraphs above as if fully set forth herein.

139.    Defendant has violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201-.213, *et seq*. (the "FDUTPA").

140.    The FDUTPA protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. 501.202(2).

141.    Plaintiff is a consumer within the meaning of Fla. Stat. § 501.203(7).

142.    Defendant engaged in trade and commerce within the meaning of Fla. Stat. § 501.203(8).

143.    The FDUTPA incorporates by reference the Federal Trade Commission's interpretations of the terms "deceptive" and "unfair." The FTC has found that a "deceptive act or practice" encompasses "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."

144.    Defendant manufactured, distributed, marketed, and sold the Specialty Dog Foods to the public even though the Specialty Dog Foods were not fit for their intended use and were harmful and toxic to dogs. Defendant failed to disclose material facts concerning the Specialty Dog Foods' content at the point of sale and otherwise.

145.    Defendant also misrepresented that the Specialty Dog Foods were particularly healthy food and beneficial to the specific needs of Plaintiffs' and the Class' dogs including, but not limited to, age-specific dietary needs, breed-specific dietary needs, digestive issues, heart issues, liver issues, or kidney issues.

26

146. Defendant's misrepresentations, omissions, deceptive acts, and unfair practices, as described herein, would deceive an objectively reasonable consumer.

147. As a result of Defendant's misrepresentations, omissions, deceptive acts, and unfair practices, Plaintiff Bone and the members of the Florida Subclass suffered actual damages by paying for the Specialty Dog Foods and paying for veterinary care and other costs arising from the illness and/or death of their dogs. Defendant's products were worthless and thus damages are the purchase price of the products as well as the associated veterinary and death-related costs and the value of the dogs they lost.

148. In addition to actual damages, Plaintiff Bone and the Florida Subclass are entitled to declaratory and injunctive relief as well as reasonable attorney's fees and costs pursuant to Fla. Stat. § 501.201, *et seq.*

**Count VIII**
**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §75-1.1 et seq.**
**(By Plaintiff Sawyer on Behalf of the North Carolina Subclass)**

149. Plaintiffs reallege the paragraphs above as if fully set forth herein.

150. The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") prohibits "Unfair methods of competition…and unfair or deceptive acts or practices in or affecting commerce…" N.C. Gen. Stat. § 75-1.1(a).

151. The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

152. Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

153.    In the course of Defendant's business, it manufactured, distributed, marketed, and sold the Specialty Dog Foods to the public even though the Specialty Dog Foods were not fit for their intended use and were harmful and toxic to dogs.  Defendant failed to disclose material facts concerning the Specialty Dog Foods' content at the point of sale and otherwise. Accordingly, Defendant engaged in both unfair and deceptive practices in violation of the NCUDTPA.

154.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff Sawyer and the North Carolina Subclass.  Had Plaintiff Sawyer and the North Carolina Subclass known about the defective nature of the Specialty Dog Foods, they would not have purchased the Specialty Dog Foods, they would not have fed their dogs the Specialty Dog Foods, their dogs would not have suffered the resulting medical conditions or would not have died, and they would have avoided the expensive medical treatment associated therewith.

155.    Defendant acted with willful and conscious disregard of the rights and property of others, subjecting Plaintiff Sawyer and the North Carolina Subclass to cruel and unjust hardship as a result, such that an award of punitive damages is appropriate.

156.    Pursuant to N.C. Gen. Stat. § 75-16, Plaintiff Sawyer and the North Caroline Subclass request that the Court grant treble damages.

**Count IX**
**Unjust Enrichment**
**(By All Plaintiffs on Behalf of the Nationwide Class)**

157.    Plaintiffs reallege the paragraphs above as if fully set forth herein.

158.    Defendant has received, and continues to receive, a benefit at the expense of Plaintiff and members of the Class.  Defendant is aware of this benefit.

28

159.    As described above, Defendant produced, marketed, distributed and sold the Specialty Dog Foods as specially formulated to the specific needs or illnesses of dogs when in actuality the food endangers the lives of dogs.

160.    Defendant has charged and collected from consumers, including Plaintiffs and members of the Class, money for dog food that endangers the lives of dogs.  Defendant thus has received benefits that they have unjustly retained at the expense of Plaintiffs and members of the Class.

161.    As a direct and proximate result of Defendant's unlawful acts and conduct, Plaintiff and members of the Class were deprived of the use of their monies that was unlawfully charged and collected by Defendant, and are therefore entitled to restoration of their monies.

162.    It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

163.    Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

A.    an order certifying the proposed Classes, appointing Plaintiffs as representatives of the Classes, and appointing Plaintiffs' counsel to represent the Classes;

B.    an order awarding Plaintiffs and the Classes their actual damages, treble damages, and/or any other form of monetary relief provided by law;

C.    an order awarding Plaintiffs and the Classes restitution, disgorgement, or other equitable relief as the Court deems proper;

D.    an order enjoining Defendant from its unlawful conduct;

E.      an order requiring Defendant to take action to ensure that *all* potentially affected products are identified on Hill's website and removed from shelves;

F.      an order awarding the pre-judgment and post-judgment interest as allowed under the law;

G.      an order awarding Plaintiffs and the Classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

H.      an order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.

Dated: February 11, 2019                    Respectfully submitted,

By:    */s/    Joseph S. Tusa*
          Joseph S. Tusa
          **TUSA P.C.**
          P.O. Box 566
          Southold, NY 11971
          Telephone:  (631) 407-5100
          Email: joseph.tusapc@gmail.com

          and

          150 Motor Parkway, Ste. 401
          Hauppauge, New York 11788
          Telephone: (631) 407-5100

          ***Local Counsel for Plaintiffs***

          Jennifer W. Sprengel (*pro hac vice* forthcoming)
          Nyran Rose Rasche (*pro hac vice* forthcoming)
          Daniel O. Herrera (*pro hac vice* forthcoming)
          John Scheflow (*pro hac vice* forthcoming)
          **CAFFERTY CLOBES MERIWETHER**
                **& SPRENGEL LLP**
          150 S. Wacker Dr., Suite 3000
          Chicago, Illinois 60606
          Telephone: (312) 782-4880
          Facsimile: (312) 782-4485
          Email: jsprengel@caffertyclobes.com
                nrasche@caffertyclobes.com
                dherrera@caffertyclobes.com
                jscheflow@caffertyclobes.com

          ***Counsel for Plaintiffs***

31